United States Courts
Southern District of Texas
FILED

JAN - 8 2010

Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

UNITED STATES OF AMERICA EX REL     §
RENE SHUPE,                         §          Case No. **C   – 1 0 – 0 0 0 8**
                                    §
VS.                                 §          **UNDER SEAL**
                                    §
CISCO SYSTEMS, INC.;                §          **JURY REQUESTED**
AVNET, INC.; and CALENCE, LLC.      §
AKA Insight Enterprises, Inc.       §

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff/Relator brings this *qui tam* claim on behalf of the United States of America for the abuse, fraud, and waste of the federal E-rate program by the Defendants knowing submission of false claims to the Government. Defendants knowingly defrauded the Government by interfering with the E-rate mandated competitive bidding process, which eliminated competition and caused low bids to not be submitted to the Government for consideration. Defendants knowingly defrauded the Government by falsifying invoices through titling E-rate ineligible equipment under the guise of E-rate eligible equipment. Defendants knowingly defrauded the Government by coercing schools and libraries to ignore the E-rate lowest responsible bid requirement and to choose the Defendants' as vendor of choice by offering kickbacks and other incentives. As a result, Defendants were necessarily always chosen as the service and equipment providers; Defendants were compensated for the purchase, installation, and maintenance of E-rate ineligible items; and Defendants were allowed to make large profits through abuse, fraud, and waste of the E-rate program by gold plating schools and libraries. Through the Defendants' writing of the schools' and libraries' Request for Proposals of desired equipment, bid rigging, and elimination of competition, Defendants created a free access to Government compensation

for its equipment and services, regardless of E-rate eligibility. All of the Defendants' actions mentioned above were executed through the intentional submission of material false claims to the Government.

Relator prays that the Court awards the Relator treble damages and all such civil penalties as are required by law, together with attorney fees, costs, pre-judgment and post-judgment interest, and all such further relief as may be just and proper, including without limitation, the statutory and equitable relief to which Relator is entitled and including Relator's remedies/damages under 31 U.S.C. § 3730(h).

# I.
## JURISDICTION AND VENUE

1.1     This is an action to recover damages and civil penalties on behalf of the United States of America arising out of false claims and records presented by Defendants to the United States. This action arises under the provisions of Title 31 U.S.C. § 3729, *et seq.*, popularly known as the False Claims Act (FCA), which provides that the United States District Courts shall have exclusive jurisdiction.

1.2     Jurisdiction is also proper under 31 U.S.C. § 3730(e)(4) as the Relator is an original source of the information, unless noted otherwise, meaning the Relator has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section, which is based on the information. Relator's knowledge of Defendants' fraudulent claims through the federal E-rate program was gained by his own efforts as a contractor for Defendant Avnet and as an innocent competitor of Defendants Cisco and Avnet. That knowledge was not based on or derived from the information of others. Relator has standing to bring this *qui tam* action under the False Claims Act (FCA), even if the Relator has suffered no injury. The Relator has merely

stepped in as a government representative or assignee to effectuate the statute's purpose of uncovering fraud against the government.  U.S. Const. Art. III, § 2, cl.1; 31 U.S.C.A. § 3730(b-d).

1.3     The FCA claims are based upon Defendants' submission of false and fraudulent E-rate claims to the United States Government in order to obtain millions of dollars in payments for various over elaborate and exaggerated projects Defendants conducted in South Texas schools and libraries. The false claims and false statements were part of Defendants' unlawful scheme to obtain large profits by wrongfully entering into large networking projects with schools and libraries that allowed for an over installation of networking equipment to take advantage of the government E-rate program, which pays up to 90% of the costs of equipment and installation.

1.4     Section 3732(a) of the FCA provides that "[a]ny action under section 3730 may be brought in any judicial district in which the Defendant or, in this case of multiple Defendants, any one Defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Defendants transact business within the Southern District of Texas, and the acts proscribed by section 3729 occurred in the Southern District of Texas.

## II.
### PARTIES

2.1     *Qui tam* Relator Rene Shupe brings this action on behalf of the United States of America.

2.2     Relator Rene Shupe (Shupe) is a citizen and resident of the State of Texas. He worked as an independent contractor, project manager, and designer for Defendant Avnet/Calence and later Integrity Communications, Inc. Relator Shupe witnessed first hand Defendants intentional actions of abuse, fraud, and waste of the federal E-rate program to obtain

large profits from the Government. Relator Shupe also witnessed Defendants' gold plating (over installation of network infrastructure) of South Texas schools and libraries.

2.3    As required under the FCA, 31 U.S.C. § 3730(a)(2), Relator will provide to the Attorney General of the United States and to the United States Attorney for the Southern District of Texas, simultaneously with the filing of the original complaint, a statement of all material evidence and information related to the complaint.

2.4    Service of the First Disclosure Statement and Relator's Original Complaint will be accomplished pursuant to the Fed. R. Civ. P. 4(i) upon the United States of America by service upon the United States Attorney for the District in which the action is brought, U.S. Attorney Tim Johnson, by certified mail at P.O Box 61129, Houston, Texas 77208, and by also sending copies under seal of the First Disclosure Statement and Original Complaint by certified mail to the Attorney General of the United States, Eric Holder, at the Department of Justice, 950 Pennsylvania Avenue N.W., Washington, D.C. 20530-0001.

2.5    Defendant Cisco Systems, Inc. (Cisco) is a California corporation with its headquarters in San Jose, California. Defendant Cisco operates nationally. Defendant Cisco participated in the federal E-rate program by offering its equipment to schools and libraries. The waste, fraud, and abuse occurred when Defendant Cisco conspired with Defendant Avnet to install more networking infrastructure than necessary in schools and libraries to obtain large profits from the Government through the federal E-rate program. Defendant Cisco used kickbacks and other incentives to coerce the schools and libraries into solely using Cisco products in the updating of their networks before the E-rate mandated competitive bidding process was open to other potential product designers.

2.6     Defendant Avnet, Inc. (Avnet) is a New York corporation with its headquarters in Phoenix, Arizona. Defendant Avnet is an installer of Cisco network infrastructure and has participated in the installation of communication networks for South Texas schools and libraries. Defendant Avnet conspired with Defendant Cisco to gold plate the schools, in an attempt to defraud the Government. Defendant Avnet committed this crime through abuse and waste of the E-rate program. Defendant Cisco is the sole parts supplier for Defendant Avnet.

2.7     Defendant Calence, LLC (Calence) is a Delaware limited liability company with its headquarters in Tempe, Arizona. Defendant Calence manages Defendant Avnet's data and voice networks and the telecommunications expense support. Defendant Avnet's networking services team is a part of Defendant Calence. Defendant Calence is managed by Insight Enterprises, Inc.

## III.
### APPLICABLE LAW AND REGULATIONS

**A.     The False Claims Act**

3.1.    The False Claims Act (FCA) provides, in pertinent part, that:

(a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government . . . .

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . .

(b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

---

Relator's Complaint

31 U.S.C. § 3729. The FCA states, "[a] person may bring a civil action for a violation of section 3729 for the person and the United States Government". 31 U.S.C § 3730(b)(1). This virtually grants any person the right to bring a *qui tam* action against a defendant that has defrauded the United States Government. This right extends to former employees and competitors.

### B.      The E-RATE Program

3.2      E-RATE Program Overview: The federal E-rate program is administered by the Universal Service Administrative Company (USAC) under the direction of the Federal Communications Commission (FCC) and provides discounts to assist most schools and libraries in the United States to obtain affordable telecommunications and Internet access. The program was set up in 1997 when the Federal Communications Commission (FCC) adopted a Universal Service Order implementing the Telecommunications Act of 1996. The Order was designed to ensure that all eligible schools and libraries have affordable access to modern telecommunications and information services. Up to $2.25 billion annually is available to provide eligible schools and libraries with equipment and service discounts under the E-rate program. The Schools and Libraries Division (SLD) of USAC supports connectivity - the conduit or pipeline for communications using telecommunications services and/or the Internet. Funding is requested under four categories of service: telecommunications services, Internet access, internal connections, and basic maintenance of internal connections. Discounts for support depend on the level of poverty and the urban/rural status of the population served and range from 20% to 90% of the costs of eligible services. Eligible schools, school districts, and libraries may apply individually or as part of a consortium. Applicants must provide additional resources including end-user equipment (e.g., computers, telephones, etc.), software,

professional development, and the other elements that are necessary to utilize the connectivity funded by the Schools and Libraries Program.

3.3     E-rate Program Application Process: According to USAC and the U.S. Department of Education, the application process for the federal E-rate program is very involved. The idea behind the lengthy application process is to discourage economic waste and abuse, allow for an in depth look into the applicants, and encourage competitive bidding from potential installers and service providers of network infrastructure.

3.4     The first step in the application process is to develop a technology plan and a Request for Proposal (RFP) to submit to the State or another certified approving body. The technology plan sets out how and what technology will be used to achieve specific curriculum reforms or library service improvements. The RFP's include a list of all desired equipment and services. The technology plan must include (1) clear goals and realistic strategy for using telecommunications and information; (2) a professional development strategy to ensure that the staff knows how to use the new technology; (3) an assessment of the telecommunication services, hardware, software, and other services; (4) a sufficient budget to acquire and support the non-discounted elements of the plan: the hardware, software, professional development, and other services that will be needed to implement the strategy; and (5) an evaluation process that enables the school or library to monitor progress toward the specified goals.  Before discounted services begin, an SLD-certified technology plan approver must approve the technology plans. Applicants who seek discounts only for basic local, cellular, PCS and/or long distance telephone service, and/or voicemail need not submit a technology plan.

3.5     The second step is to submit FCC Form 470, Description of Services Requested and Certification Form. The SLD posts completed 470 forms on its website to notify service

providers that the applicant is seeking the products and services identified. USAC placed certain rules on the filing of a Form 470. In pertinent part:

- The Form 470 MUST be completed by the entity that will negotiate with potential service providers.

- The Form 470 cannot be completed by a service provider who will participate in the competitive process as a bidder. If a service provider is involved in preparing the Form 470 and that service provider is involved in Form 471, this will taint the competitive process and lead to denial of funding requests that rely on that Form 470.

- The Form 470 applicant is responsible for ensuring an open, fair, and competitive process and selecting the most cost-effective provider of the desired services.

- The applicant must save all competing bids for services to be able to demonstrate that the bid chosen is the most cost-effective and lowest responsible bid, with price being the primary consideration. As with all documents that may be requested as part of an audit or other inquiry, such bids must be saved for at least five years after the last date of service delivered.

3.6     The third step is to wait 28 days after the Form 470 is posted on the SLD website to allow for a competitive bidding process before signing any contract or making other arrangements for new services. However, nothing in this process is intended to supplant or replace State or local competitive bidding processes or timeframes. The Form 470 Receipt Notification Letter will indicate the Allowable Vendor Selection/Contract Date (the 28th day after the posting of your Form 470).

3.7     The fourth step, after selecting the service provider, is to file the Form 471 Services Ordered and Certification Form, with the SLD during a specified filing period to

request funding of desired equipment and services. Applicant must identify each vendor and the discounts requested. The Form 471 is used to calculate the discount percentage to which the applicant is entitled. In general, the E-rate discount is based on the percent of the local school district population eligible for the National School Lunch Program.  The Form 471 also lists the individual funding requests, which must be separated by service category and service provider.

3.8     The fifth step occurs when the applicant receives a "Receipt of Acknowledgment Letter" from the SLD. This is when the Applicant receives a confirmation letter, showing data entered.  Applicant then must note the application number, verify the accuracy of information, and correct any errors.

3.9     The sixth step is for the SLD to review the Form 471. The SLD might ask the applicant questions about the data entered or about the eligibility of the services and products requested if there are any discrepancies.

3.10     The seventh step is to receive a Funding Commitment Decision Letter (FCDL). FCDL's are sent to both the applicant and the potential service provider, setting out the decisions for each funding request. If an applicant believes any of its funding requests have been incorrectly reduced or denied, the applicant can appeal the SLD decision(s), either to the SLD or to the FCC. Appeals must be received or postmarked no later than 60 days after the date of the SLD decision letter.

3.11     The eighth step is to file a Form 486, Receipt of Service Confirmation Form, which tells the SLD that delivery of services has begun.

3.12     The ninth step is to file an invoice, FCC Form 472 or FCC Form 474, that tells the SLD to pay the service provider. The SLD must receive the invoice in order to pay the discounted amount on services for which funds have been committed. If the Applicant receives

discounts on bills from service providers, the service providers must submit the Form 474, Service Provider Invoice Form, to receive payment for the discounts they have provided. If applicants wish to request reimbursement for services for which they have already paid in full, they must submit a Form 472, Billed Entity Applicant Reimbursement Form. Receipt of the discounts or reimbursements completes the E-rate process.

## IV.
### THE SCHEME UNDERLYING THE FALSE CLAIMS ON THE GOVERNMENT

4.1     Relator Shupe began his employment as an independent contractor with Defendant Avnet/Calence in January of 2003 as a Project Manager and Designer. Relator Shupe's job responsibilities included onsite project management, design of new network systems, installation of network infrastructure, and inventory control. Relator Shupe worked on projects throughout South Texas and gained knowledge of the schemes, fraudulent and false claims practices from 2000-thru the present. In January of 2005, he began work at Integrity Communications, Ltd. (Integrity) as an independent contractor, maintained the same job responsibilities, and worked in the same region.

4.2     Relator Shupe initially learned about the E-rate program through the installation and maintenance of network infrastructure while working for Defendant Avnet. In 2003, Relator Shupe learned how Defendant Avnet/Calence acted in concert with the Defendant Cisco to engage in a scheme to abuse and waste the E-rate program and defraud the Government. Relator learned this from Defendant Avnet/Calence's employees Richard Zuniga, District Service Manager; Travis Finley, Account Representative; Jeff Byrom, Project Manager and Sales Representative; and Mike Beeman, E-rate consultant. He further learned about product eligibility, completion time frames, and gold plating through his employment at Defendant Avnet/Calence. At Integrity, Relator Shupe continued working with the E-rate program.

4.3     Relator Shupe quickly realized the illegality of Defendants actions. The illegal actions included the Defendants' exercise of trade restrictive practices, bid rigging, inserting exclusionary terms into the schools' and libraries' requests for proposals, and gold plating.

4.4 Relator Shupe specifically noticed frequent gold plating of South Texas schools and libraries, tampering of the competitive bidding processes, Cisco cookie-cutter RFP's, and RFP's that specified Cisco equipment by Cisco Gold Partners only. Further, Relator witnessed the renaming of ineligible Cisco equipment under the guise of eligible equipment and the Defendants hiring of employees of the schools and libraries who were key players in getting the Defendants bid selected and approved.

4.5     Relator Shupe admits as a condition of his employment to helping with the illegal gold plating, tampering with the competitive bidding process, writing the cookie-cutter RFP's that specified Cisco equipment by Cisco Gold Partners only, titling ineligible Cisco equipment under the guise of eligible equipment, and hiring of the schools and libraries employees that aided in getting Defendants' bids approved by the Defendants.

4.6     As noted in paragraphs 3.3, and 3.5, the federal E-rate program specifically prohibits all of the events listed in paragraphs 4.3-4.5. Further, Exhibit A verifies that exclusionary language limiting competing service providers to Cisco Gold Partners is specifically prohibited by the E-rate program. All the prohibited actions were executed by the means of the Defendants knowingly submitting false claims to the Government through the E-rate program.

4.7     The material false claims, which resulted in gold plating, fraudulently asserted that much more equipment than necessary was required to outfit schools and libraries with an adequate networking system. Defendants knowingly installed large numbers of networking drops

in schools and libraries to justify the over elaborate and lavish networking infrastructure installations. This specifically took place at Robstown I.S.D. and Brownsville I.S.D. Further, Defendants used Robstown I.S.D. and Brownsville I.S.D. as a template for all the schools and libraries in Texas. Thus, Defendant's false claims surrounding gold plating caused the Government to wrongfully expend millions of taxpayers of dollars. This would not have occurred if true claims about the amount of equipment necessary to outfit the schools and libraries were submitted to the government and the Defendants did not knowingly abuse the E-rate program.

4.8     The Defendants' intentional tampering with the competitive bidding process gave Defendants a guaranteed ticket to the Government's funds and a large competitive advantage over all other competitors. The Government was defrauded because Defendants knowingly presented false claims to the Government asserting that Defendants were the lowest reasonable bidders, which was only possible due to the Defendants intentional tampering with the competitive bidding process.

4.9     The Defendants creation and use of Cisco cookie-cutter RFP's directly violated E-rate rules and is included with the tampering of the competitive bidding process. A Cisco cookie-cutter RFP is prepared by Defendants and allows for the schools and libraries to include language in the requested equipment and services section that eliminates most all other competitors. Further, it is against E-rate rules and policies for a service provider to prepare a RFP or Technology Plan.

4.10     The Defendants' renaming of E-rate ineligible equipment under the guise of eligible equipment is a direct false claim on the Government.

4.11    The Defendants' hiring of employees of the schools and libraries that were key players in getting the Defendants' bid approved is a direct violation of the anti-kickback rules and competitive bidding requirements of the E-rate program. By giving the schools' and libraries' employees incentives to approve the Defendants' bid, false claims were presented upon the Government. These incentives induced the schools and libraries to lie about the true lowest responsible bidder, misrepresenting that Defendants were the lowest responsible bidders. This is a false claim upon the Government because Defendants knowingly caused themselves to be misrepresented as the lowest responsible bidders to the Government, which enables Defendants to profit from the false claims. Though not directly involved Senior Project Manager, Brad Allen, knows of multiple cases of this type of Incentive through our the Costal Bend and the Valley.

### THE FACTS

4.12    The facts hereafter are plead with particularity as to satisfy the Fed. R. Civ. P. 9(b) requirements for fraud pleadings and with particularity as required by Fed. R. Civ. P. 26 to trigger the Fed. R. Civ. P. 26(a)(1) disclosure rule.

4.13    Relator alleges that from 2003 to present, Defendants tampered with the competitive bidding requirements of the E-rate program. This was done by the Defendants coercing the schools and libraries to include exclusionary language in the RFP's and promising kickbacks, such as jobs for the schools' and libraries' E-rate and technology representatives. The exclusionary language included terms that strictly limited all equipment and services to be Cisco equipment provided by a Cisco Gold-Partner. Further, Relator alleges that the RFP's made public by the schools and libraries began to look the same, and most schools and libraries were using the Cisco cookie-cutter RFP's. Not only the schools used the Cisco cookie-cutter RFP's

with exclusionary language, but also the Region One Education Center posted Cisco cookie-cutter RFP's. The use of the Cisco cookie-cutter RFP greatly thinned the competition for E-rate funding because it required only Cisco equipment to be purchased from and installed by only Cisco Gold Partners (Defendants). This exclusionary language violates E-rate rules.

4.14   Defendant Cisco had a local full time sales representative, Kurt Sell, who was assigned to visit, coerce, and conspire with the schools E-rate representatives. Sell insured that Defendants would receive large quantities of technology monies from the submission false claims to E-Rate program by schools and libraries.

4.15   Sell convinced many uneducated school district technology directors to use exclusively Cisco hardware. He further reassured the technology directors that Defendants could legally design the schools technology infrastructures and help them create and write the RFP's in a way that would eliminate all but Cisco Gold Partners from being able to qualify for the projects.

4.16   Defendants used Kurt Sell, Scott McKay, and Relator Shupe to sell, create, and profit from robust gold plated Cisco networks for the school districts including, but not limited to, the school districts listed below.

4.17   Defendants employee's, Sell and McKay, specifically helped design and write RFP's for the districts which specified that "Only Cisco Gold Partners" would be accepted for the project. Further, Sell and McKay convinced school districts to apply for Cisco "Voice Over IP" (VoIP) phone systems in year 4 of the E-rate program when VoIP was an E-rate ineligible product.

4.18   Defendants sold and installed E-rate ineligible VoIP equipment under the guise of an eligible PBX system. This is a type of product substitution is directly prohibited by the E-rate

program. On information and belief, much more equipment was purchased through the E-rate program that did not meet E-rate eligibility requirements using solely Defendants as venders of choice. Further, Defendants installed equipment paid for through the federal E-rate program in locations not approved for E-rate discounts.

4.19    Relator witnessed excessive E-rate funding awards that were well beyond the normal or even best funding amounts ever awarded to his knowledge. As a result of the large E-rate awards, Relator noticed the practice of gold plating[1] throughout the South Texas schools and libraries.  In addition, most schools and libraries asked for network upgrades and networking product replacements nearly every year with the same exclusionary language from the Cisco cookie-cutter RFP's that demanded only Cisco equipment to be provided and installed by only Cisco Gold Partners.

4.20    There were numerous meetings conducted by Defendant's employees with prospective schools and libraries dictating exact Cisco equipment to be purchased according to Defendants designs and engineering.

4.21    One such meeting occurred on December 9, 2003 at the Corpus Christi I.S.D. (C.C.I.S.D.) District Technology Center. The meeting was a non-mandatory pre-bid conference. Numerous service providers were present, including Defendants Avnet. Only one vender was present, Defendant Cisco. Defendant Cisco sent a Cisco Systems Account Manager, Brandon Bonar, and a Cisco Engineer, Jonathan Klossner, to present at the meeting. Klossner conducted most of the conference and focused C.C.I.S.D.'s attention to only Defendant Cisco's equipment. During the C.C.I.S.D. walkthrough of the pre-bid meeting, the competitors were given Defendant

---

[1] **Gold Plating** is the purchase and placement of technology equipment that far exceeds the technical requirements of the project. Defendants embellish many network infrastructure designs with hi-end network switching solutions, over cabling, many battery packs, and unused equipment that was ultimately designed to support hi-capacity corporate network functions that are well beyond the needs and requirements of K-12 schools.

Avnet-made prototype network maps that had the names of Defendant Avnet's representatives on them. This constitutes a direct violation of the E-rate policy.

4.22    Another C.C.I.S.D. meeting occurred in December of 2004. A site survey visit was setup for all participating service providers to inspect the schools. All interested service providers were issued copies of schools maps to orient the vendors. The maps, however, were prepared by Defendant Avnet's employee, Brad Allen, and included diagrams of potential Cisco equipment to use. See Exhibit B. These maps gave attending service providers the impression that Defendants Cisco and Avnet had violated the competitive bidding requirements, C.C.I.S.D. had already chosen the Defendants, and that wrongful and illegal actions were taking place. It is worthwhile to note that Paul Gay Account Manager with Southwestern Bell and Travis Finley Account Manager with Internetwork Experts both service providers attending site surveys commented that from what they had both witnessed it was apparent that C.C.I.S.D. had already made a choice to select Avnet and they were only going through the motions of the bid processes.   Travis Finley did comment that he would like to contest what was happening; however, he was fearful that it would jeopardize his company's relationship with Cisco.

4.23    Defendant's were eventually invited to design the C.C.I.S.D. projects well before the RFP was made public. Relator Shupe designed no less than eight of the C.C.I.S.D. network systems before the RFP's were made public. Defendants helped in the preparation of C.C.I.S.D.'s RFP and in correcting the RFP to make Defendants seem to be the lowest responsible bidder.   Over time, Defendants developed a close relationship with C.C.I.S.D. employees, Emilio Flores and Thomas Molina, who were both influential in getting Defendant's bid approved and selected by C.C.I.S.D.

4.24    Defendants directly violated the E-rate program rules by interfering with the competitive bidding process through conducting the pre-bid conference that directed C.C.I.S.D. towards only using Cisco equipment provided by Cisco Gold Partners, denying other venders which had other viable solutions the access to share the information regarding their solutions and services, allowing Defendants to prepare the RFP's for C.C.I.S.D., and entering an agreement with Avnet before the mandatory 28 day waiting period after the Technology Plan and RFP were made public.

4.25    Further, Emilio Flores was convinced into allowing Defendants to gold plate the C.C.I.S.D. schools. Defendants specifically installed large numbers of drops in each school room that was accompanied by the best and most expensive Cisco networking switches. In the end, C.C.I.S.D. obtained technology equipment that far exceeded the technical requirements of the project. Defendants continually embellished many network infrastructure designs with hi-end network switching solutions, over cabling, many battery packs, and unused equipment that was ultimately designed to support hi-capacity corporate network functions that was well beyond the needs and requirements of K-12 schools.

4.26    In 2004, one of largest South Texas gold plating, competition restrictive, and installation of ineligible E-rate equipment scheme was executed in Robstown, Texas. Robstown I.S.D.'s RFP contained many terms that excluded vendors, leaving only Cisco Gold Partners able to respond to the RFP. This eliminated all but two competitors, GDS and Defendant Avnet.

4.27    The Robstown I.S.D.'s RFP specifically stated the following information:

> Quotes are to be hand delivered, mailed, or e-mailed to Ovidio Barbour, Director of Information Technology, Robstown Independent School District, 609 Hwy 44, Robstown, Texas 78380; ovidio.barbour@robstownisd.org.  Please mark your envelope, cover sheet, or E-mail message plainly.

Quotes are due to Robstown Independent School District, 609 Hwy 44, Robstown, Texas at 12:00 p.m., on Wednesday, 28 January, 2004. Any quote received after this time will not be considered. Robstown ISD will not be responsible for quotes lost in transit.

Any vendor submitting a quote for networking equipment must be a Cisco Gold partner. The vendor must submit proof of their current Cisco Gold partner status.

4.28    GDS had all material ready for final presentation in a sealed envelope with an outside label to acknowledge the RFP instructions. GDS delivered its bid in accordance with the bid instructions

4.29    Relator Shupe confirms that Defendant Avnet violated the competitive bidding requirement and it did not have a hard copy of the bid response completed by the bid deadline. Relator Shupe alleges that Defendants met with Patrick Chapa at Robstown I.S.D. the day the bid was due. Relator Shupe confirms that, during the meeting with Patrick Chapa, Defendant Avnet used a company laptop to 'fix' the bid and print copies of the bid in the Robstown I.S.D. Technology Offices. For the 'fixing' to occur, Defendant Avnet unsealed GDS' bid and worked with Chapa to make Defendants' bid more appealing than the GDS bid.

4.30    Extreme gold plating also took place at Robstown I.S.D. To get Chapa to help with the gold plating, the possibility of a job with Defendant Avnet was discussed, and the eventual hiring of Chapa occurred after the completion of the project. Relator Shupe witnessed Defendants' employee, Richard Zuniga, offering Chapa an opportunity for employment. The Robstown I.S.D. gold plating project included the over installation of Backbone Cable. In Robstown, each school has a Main Distribution Closet (MDF) and multiple Intermediate Distribution Closets (IDF's). The Backbone Cable ties the MDF to all the IDF's in a school. The Backbone Cable in Robstown I.S.D. consisted of 100 pairs of Category 3 Tie Cable, RG-11 Coaxial Cable, and 12 Strand Multimode Fiber. A total of thirteen 13KVA battery packs were

installed throughout the school district. In each classroom, horizontal drops (Category 6, twisted pair Plenum) were connected to the IDF's. There were an extremely high, unprecedented number of drops per room. Horizontal cabling was installed in the Robstown Administrative Building, which is not E-rate eligible. The battery pack deployment was done three months after the actual sign-off on the project. Zuniga coerced Relator Shupe to pressure Chapa to sign-off on the project early, which Chapa did. Two of the Batteries paid for by the E-rate program were never installed and were put in an "out of the way" portable trailer. The removal of the Cisco 3500 switches and the installation of new Cisco 6509 switches occurred as well. Defendant Avnet removed working Cisco 3500 switches and placed them in the same portable trailer as the unused batteries and chassis's of unused Cisco 4500 switches. Relator Shupe alleges that Zuniga and Defendant Avnet instructed for the unused items to be placed out of sight in case of any SLD audits. Avnet won a data cabling project to handle the installation of network cabling at the Corpus Christi Police Department. Avnet utilized excess cabling from the Robstown I.S.D. E-rate awarded projects to complete project allowing greater profits.

    4.31    The following is a chart summarizing the E-rate funding for Robstown I.S.D. in 2004.

| FRN | Applicant Name | BEN | Application | SPIN | Service Provider | Commitme | Funding Year | FCDL Date | INTERNAL CONNECTIONS | Orig NR Cost |
|---|---|---|---|---|---|---|---|---|---|---|
| 1199825 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $1,102,531.57 |
| 1199955 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $413,905.85 |
| 1200289 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $203,209.06 |
| 1200424 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $42,504.71 |
| 1200545 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $84,623.80 |
| 1200676 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $283,627.54 |
| 1200833 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $36,387.34 |
| 1201014 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $318,772.00 |
| 1201121 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $91,673.00 |
| 1201217 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $67,175.00 |
| 1201304 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $750,213.75 |
| 1201379 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $220,000.00 |
| 1201461 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $488,492.83 |
| 1201536 | ROBSTOWN ISD | 141604 | DISTRICT | 143030052 | Calence, LLC | FUNDED | 2004 | 7/20/2004 | INTERNAL CONNECTIONS | $465,126.09 |
| | | | | | | | | | | $4,568,242.54 |

    4.32    The following is a maintenance equipment list for Robstown I.S.D. in 2004 that details the over abundance of materials that were fraudulently represented to the Government as essential in the upgrading of Robstown I.S.D. by Defendants.

Robstown Independent School District
Entity Number 141604
Maintanance Equipment List

2004 Inventory listing Robstown ISD

| Vendor | Model Number | Equipment Description | Serial Number |
|---|---|---|---|
| Cisco | WS-C6506 | Catalyst 6506 Chassis | TBM06060983 |
| Cisco | WS-C6506 | Catalyst 6506 Chassis | TBM06060997 |
| Cisco | WS-C6506 | Catalyst 6506 Chassis | TBM06060958 |
| Cisco | WS-C6506 | Catalyst 6506 Chassis | TBM06060884 |
| Cisco | WS-C3548-XL-EN | Catalyst 3548 XL Enterprise Edition | FAB0602P2DU |
| Cisco | WS-C3548-XL-EN | Catalyst 3548 XL Enterprise Edition | FAB0605P2J3 |
| Cisco | WS-C3548-XL-EN | Catalyst 3548 XL Enterprise Edition | FAB0601Q2FJ |
| Cisco | WS-C3548-XL-EN | Catalyst 3548 XL Enterprise Edition | FAB0602P2BW |
| Cisco | WS-C3548-XL-EN | Catalyst 3548 XL Enterprise Edition | FAB0602P2FJ |
| Cisco | WS-C3548-XL-EN | Catalyst 3548 XL Enterprise Edition | FAB0602P2FS |
| Cisco | WS-C3548-XL-EN | Catalyst 3548 XL Enterprise Edition | FAB0602Q22X |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y248 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y24E |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23D |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y24D |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y24C |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23M |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y244 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y243 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y200 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23U |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y245 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y240 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y242 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23Z |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23W |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606P0CN |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23R |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y22P |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y246 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y235 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23X |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y24F |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y249 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y227 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y241 |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y1FB |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23Y |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y24G |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y22T |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y1MD |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y24A |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23S |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y21A |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23K |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23L |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23T |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y23V |
| Cisco | WS-C3512-XL-EN | Catalyst 3512 XL Enterprise Edition | FAB0606Y20M |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y13B |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y150 |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y18F |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y191 |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y15R |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y19P |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y18H |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y17L |

1 of 3

Robstown Independent School District
Entity Number 141604
Maintanance Equipment List

| Vendor Name | Cisco Part Number | Cisco Part Descripton | Serial Number |
|---|---|---|---|
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y18Z |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y19D |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y19B |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y17C |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y17N |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y163 |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y18S |
| Cisco | WS-C3524-XL-EN | Catalyst 3524 XL Enterprise Edition | FAB0607Y19C |
| Cisco | WS-C6509 | Catalyst 6509 Chassis | TSC0650003Q |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W114 |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W11F |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W11A |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W111 |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W11M |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W12R |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W11L |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FJ |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FC |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0EF |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FT |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FX |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FG |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FU |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FP |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FA |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0E8 |
| Cisco | WS-C6509 | Catalyst 6509 Chassis | TSC0650042 |
| Cisco | WS-C6509 | Catalyst 6509 Chassis | TSC06500043 |
| Cisco | WS-C6509 | Catalyst 6509 Chassis | TBM06493821 |
| Cisco | WS-C6509 | Catalyst 6509 Chassis | TSC0650003M |
| Cisco | WS-C6509 | Catalyst 6509 Chassis | SMG0643A02R |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0EJ |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FH |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FK |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0F5 |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FD |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FM |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0CW |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0EM |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FB |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0F9 |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W091 |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W06J |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W119 |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W11N |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W12A |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W12Q |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W11H |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W11J |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W112 |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W0FF |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652V021 |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W12P |
| Cisco | WS-C3524-PWR-XL-EN | Catalyst 3524-PWR-XL Enterprise Edition | CHK0652W11G |
| Cisco | WS-C4006-S2 | Catalyst 4000 Chassis (6-Slot),Suprvsr II,(2)AC PS, Fans | FOX0630000N |
| Cisco | WS-C4006-S2 | Catalyst 4000 Chassis (6-Slot),Suprvsr II,(2)AC PS, Fans | FOX062800TL |
| Cisco | WS-C4006-S2 | Catalyst 4000 Chassis (6-Slot),Suprvsr II,(2)AC PS, Fans | FOX0629009R |
| Cisco | WS-C4006-S2 | Catalyst 4000 Chassis (6-Slot),Suprvsr II,(2)AC PS, Fans | FOX064310N9 |

2 of 3

Robstown Independent School District
Entity Number 141604
Maintanance Equipment List

| Vendor | Part Number | Description | Serial Number |
|---|---|---|---|
| Cisco | AIR-BR350-A-K9 | Aironet 350 Bridge | VDF0633S39D |
| Cisco | AIR-BR350-A-K9 | Aironet 350 Bridge | VDF0638S1N9 |
| Cisco | AIR-BR350-A-K9 | Aironet 350 Bridge | VDF0633S39M |
| Cisco | AIR-BR350-A-K9 | Aironet 350 Bridge | VDF0636S1QR |
| Cisco | AIR-BR350-A-K9 | Aironet 350 Bridge | VDF0633S39J |
| Cisco | AIR-BR350-A-K9 | Aironet 350 Bridge | VDF0636S1QQ |
| Cisco | AIR-BR350-A-K9 | Aironet 350 Bridge | VDF0636S1QT |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0640S3RD |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0815S2ZN |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0640S3RH |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0615S84G |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0640S3RF |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0615S2X6 |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0640S34K |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0815S0BZ |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0616S3BR |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0629S1SJ |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0841S2AG |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0629S1WD |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0642S01J |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0642S01P |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0517S23D |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0640S3PS |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0641S2AN |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0629S1WE |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0642S01M |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0642S01Q |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0621S1FH |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0640S3PX |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0629S1WA |
| Cisco | AIR-AP352E2C | Aironet 350 Access Point | VDF0629S1WF |

3 of 3

4.33    Brownsville I.S.D. also fell victim to Defendants' illegal lavish Gold-plating scheme, questionable vendor relationships, unfair competitive bidding processes, and false E-rate requests. Brownsville I.S.D.'s waste, fraud, and abuse of the E-rate program occurred since 2000 and mirrors the excessive Gold-Plating that took place in Robstown I.S.D. Brownsville I.S.D. has spent $77,386,228.22 for Internal Connections from 2000 to 2008 on building a lavish network with placement of high-end switching components and other network hardware components that far exceed reasonable industry standards and engineering. Derek Weaver Avnet District Sales Manager was hired from the district after contracts were awarded.  Presently Brownsville I.S.D. has pending another $50,716,684.42 for additional Internal Connections funding.  If ultimately approved total expenditures will reach $128,102,912.64.

4.34    Brownsville I.S.D. showed signs of competitive bidding violations. The RFP No. 07-089 Structured Cabling District-Wide specifically limits the type of vendors that could respond to only Cisco Gold Partners. Vendor must be Cisco certified as either a Silver, Gold or Global reseller. Status will be verified by Cisco. Furthermore, vendor must document annual sales that exceed $ 20 million per annum. This must be verifiable through (a) Dun & Bradstreet, (b) a published annual report- if the vendor is a publicly held corporations or (c) a verifiable annual audit report prepared by a Certified Public Accountant. Robert Fisher, Administrator Instructional Technology Brownsville I.S.D. was responsible for the full application and bidding processes conducted by Brownsville I.S.D. for E-rate Universal Service purchases.

4.34    In 2008 alone, Brownsville petitioned the E-rate program to subsidize many WS-6513 Cisco Catalyst 6500 Series Switches. Depending upon final configurations, modules, and inline power accessories, each switch would list for approximately $130,000.00 Brownsville

I.S.D. requested configurations totally nearly $162,844.00 per switch. Defendants gold plated the Brownsville school district, which is seen through the following table:

2008 Brownsville I.S.D. Switch Requests

| | |
|---|---|
| Lopez High School | NINE (9) each of WS-6513 |
| Besteiro Middle School | FIVE (5) each of WS-6513 |
| Cummings Middle School | FIVE (5) each of WS-6513 |
| Garcia Middle School | SIX (6) each of WS-6513 |
| Lucio Middle School | SEVEN (7) each of WS-6513 |
| Oliveria Middle School | SEVEN (7) each of WS-6513 |
| Perkins Middle School | FOUR (4) each of WS-6513 |
| Stillman Middle School | FIVE (5) each of WS-6513 |
| Vela Middle School | FOUR (4) each of WS-6513 |
| Aiken Elementary School | FOUR (4) each of WS-6513 |
| Lincoln Park School | THREE (3) each of WS-6513 |
| Total Requested WS-6514 Switches | 59 |

4.35    Just one component of the network infrastructure at Brownsville I.S.D., known as a Cisco 6500 switch, is powerful enough, with modifications, to run an entire small school system. Brownsville I.S.D.'s Lopez High Schools uses nine Cisco 6500 switches. This is an example of illegal gold plating where the purchase and placement of technology equipment far exceeds the technical requirements of the project. Defendants embellished the network infrastructure needs with hi-end network switching solutions, over cabling, many battery packs, and unused equipment that were ultimately designed to support hi-capacity corporate network functions that are well beyond the needs and requirements of K-12 schools.

4.36    The Brownsville Public Library is another example of gold plating. Specifically, many unnecessary networking drops were incorpoated into the networking system, which equated to unnecessary expenditures for equipment, labor, and maintenance. Philip Linscott, a past Defendant Avnet Engineer, walked Relator Shupe through the library. Linscott showed Relator Shupe the excessive gold plating.

4.37    The following table displays the excessive gold plating funding perpetrated by
Defendants:

Brownsville Public Library: Funded Gold Plating

| 2009 Pending Funding Requests | $1,832,546.30 |
|---|---|
| 2008 Funding | $150,144.00 |
| 2007 Funding | $161,320.32 |
| 2006 Funding | $851,521.92 |
| 2004 Funding | $227,318.15 |
| 2003 Funding | $738,496.50 |
| Total: | $3,961,347.19 |

4.38    Robstown I.S.D., Brownsville I.S.D., and the Brownsville Public Library went so
successfully that Defendants used the three projects as a template for all Defendants' other
schools and libraries.

4.39    Edgewood I.S.D. was completed similarly to Robstown I.S.D. but on a larger
scale. The number of installed drops, batteries, equipment, and cabling were grossly excessive.
Brad Allen and Frank Lew, Defendant Avnet's employees, told Relator Shupe that Edgewood
I.S.D. installation practices were identical to Robstown.

4.40    Edgewood I.S.D. has spent $64,773,677.76 for Internal Connections funding from
1998-2005 on building a lavishly gold plated network with placement of high-end switching
components and other network hardware components that far exceed reasonable industry
standards and engineering.  Presently, Edgewood I.S.D. has pending another $56,143,876.06 for
funding years 2007 and 2008 and an additional $4,010,782.66 for Internal Connections for 2009.
If ultimately approved, total gold plating expenditures will reach $129,928,336.06 for Edgewood
I.S.D.

4.41    Gold Plating Example:  Edgewood I.S.D., RFP 09-007 P2 Basic Maintenance
Services E-rate Year 12, 2009-2010, contained a Cisco C6513/C6509 Equipment request. Basic

maintenance was requested for 139 models of these high-end network switches. The following list details multiple units with excessive quantities' listed at each school site from the RFP.

| Campus | MDF/IDF | Cisco Equipment Supported | Powerware Model PW9170+ | Powerware Model PW9125 | Powerware Model #PW9315 |
|---|---|---|---|---|---|
| Academy (EHS) | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Academy (EHS) | IDF1 | 1x6509 | 1 | 0 | 0 |
| Academy (EHS) | IDF2 | 6509 | 1 | 0 | 0 |
| Academy (EHS) | IDF3 | 6509 | 1 | 0 | 0 |
| Academy (EHS) | IDF4 | 6509 | 1 | 0 | 0 |
| Academy (EHS) | IDF5 | 3x6509 | 3 | 0 | 0 |
| Academy (EHS) | IDF6 | 6509 | 1 | 0 | 0 |
| Administration Central | MDF | 2x6513, 1x3560 | 0 | 0 | 0 |
| Administration Central | IDF1 | 1x6509, 1x3560 | 1 | 0 | 0 |
| Brentwood | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Brentwood | IDF1 | 6509 | 1 | 0 | 0 |
| Brentwood | IDF2 | 6509 | 1 | 0 | 0 |
| Brentwood | IDF3 | 6509 | 1 | 0 | 0 |
| Brentwood | IDF4 | 3750/1300 Bridge | 0 | 1 | 0 |
| Burleson/Hlth. Svcs. | MDF | 2x6513 | 2 | 0 | 0 |
| Burleson/Hlth. Svcs. | IDF1 | 6509 | 1 | 0 | 0 |
| Burleson/Hlth. Svcs. | IDF2 | 6509 | 1 | 0 | 0 |
| Burleson/Hlth. Svcs. | IDF3 | 3750 | 0 | 1 | 0 |
| Cenizo Park, new | MDF | 2x6513 | 2 | 0 | 0 |
| Cenizo Park, new | IDF1 | 6509 | 1 | 0 | 0 |
| Cenizo Park, new | IDF2 | 6509 | 1 | 0 | 0 |
| Cenizo Park, new | IDF3 | 6509 | 1 | 0 | 0 |
| Coronado Escobar | MDF | 2x6513 & 1x6509 | 2 | 0 | 0 |
| Coronado Escobar | IDF1 | 2x6509 | 2 | 0 | 0 |
| Coronado Escobar | IDF gym | 3750 | 2 | 1 | 0 |
| Food Services | MDF | 3500 | 0 | 0 | 0 |
| Garcia | MDF | 3x6513 | 3 | 0 | 0 |
| Garcia | IDF1 | 3x6509 | 3 | 0 | 0 |
| Garcia | IDF2/Cardenas | 2x6509 | 2 | 0 | 0 |

| Cardenas Elem Center | MDF | 2x6513 | 2 | 0 | 0 |
|---|---|---|---|---|---|
| Cardenas Elem Center | IDF1 | 3750 | 0 | 1 | 0 |
| Cardenas Elem Center | IDF2 | 3750 | 0 | 1 | 0 |
| Cardenas Elem Center | IDF3 | 3750 | 0 | 1 | 0 |
| Gardendale | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Gardendale | IDF1 | 6509 | 1 | 0 | 0 |
| Gardendale | IDF2 | 2x6509 | 2 | 0 | 0 |
| Gardendale | IDF3 | 3750 | 0 | 1 | 0 |
| Gardendale | IDF4 | 3500 | 0 | 1 | 0 |
| Gardendale | IDF5 | 3750 | 0 | 1 | 0 |
| Gonzalez | MDF | 2x6513 & 2x6509 | 4 | 0 | 0 |
| Gonzalez | IDF1 | 6509 | 1 | 0 | 0 |
| Gonzalez | IDF2 | 3750 | 0 | 1 | 0 |
| Gonzalez | IDF3 | 3750 | 0 | 1 | 0 |
| Gonzalez | IDF4 | 3750 | 0 | 1 | 0 |
| Gonzalez | IDF5 | 3750 | 0 | 1 | 0 |
| Hoelscher | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Hoelscher | IDF2 | 2x6509 | 2 | 0 | 0 |
| Hoelscher | IDF1 | 6509 | 1 | 0 | 0 |
| Hoelscher | IDF3 | 3750 | 0 | 1 | 0 |
| Hoelscher | IDF4 | 3750 | 0 | 1 | 0 |
| Johnson | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Johnson | IDF1 | 2x6509 | 2 | 0 | 0 |
| Johnson | IDF2 | 3500 | 0 | 1 | 0 |
| Kennedy | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Kennedy | IDF1 | 2x6513 & 2x6509 | 4 | 0 | 0 |
| Kennedy | IDF Voc | 2x6509 | 2 | 0 | 0 |
| Kennedy | IDF MS | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Kennedy | IDF FH | 3750 | 0 | 1 | 0 |
| Kennedy | IDF PE | 3750 | 0 | 1 | 0 |
| Las Palmas | MDF | 3x6513 | 3 | 0 | 0 |
| Las Palmas | IDF 2 stage | 2x6509 | 2 | 0 | 0 |
| Las Palmas | IDF 1 | 2x6509 | 2 | 0 | 0 |
| Las Palmas | IDF3 | 3500 | 0 | 1 | 0 |

Relator's Complaint

| | | | | | |
|---|---|---|---|---|---|
| Loma Park | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Loma Park | IDF3 | 1x6509 | 1 | 0 | 0 |
| Loma Park | IDF4 | 3700 | 0 | 1 | 0 |
| Loma Park | IDF1 | 1x6509 | 1 | 0 | 0 |
| Loma Park | IDF2 | 1x6509 | 1 | 0 | 0 |
| Loma Park | IDF5 | 1x3750 | 0 | 1 | 0 |
| Memorial | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Memorial | IDF1 | 3x6509 | 3 | 0 | 0 |
| Memorial | IDF2 | 2x6509 | 2 | 0 | 0 |
| Memorial | IDF3 | 2x6509 | 2 | 0 | 0 |
| Memorial | IDF4 | 2x6509 | 2 | 0 | 0 |
| Memorial | IDF5 | 3750/1300 Bridge | 0 | 1 | 0 |
| Memorial | IDF6 | 3750/1300 Bridge | 0 | 1 | 0 |
| Memorial | IDF7 | 3750/1300 Bridge | 0 | 1 | 0 |
| Memorial | IDF8 | 3750/1300 Bridge | 0 | 1 | 0 |
| Memorial | MDF2(CT) | 2x6513, 3750, 6509 | 2 | 1 | 0 |
| Perales | MDF | 2x6513 & 1x6509 | 4 | 0 | 0 |
| Perales | IDF1 | 2x6509 | 2 | 0 | 0 |
| Physical Plant Services | MDF | 6509 | 1 | 0 | 0 |
| Roosevelt | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Roosevelt | IDF1 | 2x6509 | 2 | 0 | 0 |
| Roosevelt | IDF2 | 2x6509 | 2 | 0 | 0 |
| Roosevelt | IDF3 | 3750 | 0 | 1 | 0 |
| Stafford, new | MDF | 2x6513 | 2 | 0 | 0 |
| Stafford, new | IDF1 | 6509 | 1 | 0 | 0 |
| Stafford, new | IDF2 | 6509 | 1 | 0 | 0 |
| Stafford, old | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Stafford, old | IDF1 | 2x6509 | 2 | 0 | 0 |
| Stafford, old | IDF2 | 3759 | 0 | 1 | 0 |
| Truman | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Truman | IDF1 | 2x6509 | 2 | 0 | 0 |
| Truman | IDF2 | 3750 | 0 | 1 | 0 |
| Winston | MDF | 2x6513 & | 3 | 0 | 0 |

| | | | | | |
|---|---|---|---|---|---|
| | | 1x6509 | | | |
| Winston | IDF1 | 6509 | 1 | 0 | 0 |
| Winston | IDF2 | 6509 | 1 | 0 | 0 |
| Winston | IDF3 | 3750 | 0 | 1 | 0 |
| Winston | IDF4 | 3750 | 0 | 1 | 0 |
| Winston | IDF5 | 3750 | 0 | 1 | 0 |
| Winston | IDF5 | 3750 | 0 | 1 | 0 |
| Wrenn | MDF | 2x6513 & 1x6509 | 3 | 0 | 0 |
| Wrenn | IDF1 | 6509 | 1 | 0 | 0 |
| Wrenn | IDF2 | 3750 | 0 | 1 | 0 |
| Wrenn | IDF3 | 3750 | 0 | 1 | 0 |
| Wrenn | IDF4 | 3750 | 0 | 1 | 0 |
| Wrenn | IDF5 | 3750 | 0 | 1 | 0 |

| | | | | | |
|---|---|---|---|---|---|
| Shared - ESOC | | 13x6513 | | | Upgrade 50K via Unit to 80K |

4.42    Richard Zuniga, Defendant Avnet's District Service Manager, instructed Relator Shupe to develop a bid for Donna I.S.D. A competitor, Integrity, originally won the bid; however, Zuniga influenced the Donna I.S.D. IT director, Frank Jimenez, into using Defendant Avnet. Zuniga promised kickbacks and a potential job with Defendant Avnet. Jimenez eventually withdrew the contract from Integrity and awarded Defendant Avnet the contract. Soon thereafter, Jimenez died and Marie Evans again awarded Defendant Avnet the contract. Further, the Donna I.S.D. RFP stated that the contract awardee must be a Cisco Gold Partner in good standing with Cisco. The RFP was directly influenced by Defendants to exclude and limit competition. Defendant Avnet's actions were a direct violation of the competitive bidding requirement and federal E-rate rules.

4.43    The following table displays the excessive gold plating funding perpetrated by Defendants:

---

Donna I.S.D.: Funded Gold Plating

| 2009 Pending Funding Requests | $16,074.36 |
|---|---|
| 2008 Funding | $354,027.92 |
| 2007 Funding | $82,205.76 |
| 2006 Funding | $113,696.96 |
| 2004 Funding | $298,704.15 |
| 2003 Funding | $517,598.70 |
| Total: | $1,382,307.85 |

4.44    Other schools were in violation of the E-rate program rules as well.

4.45    The Brooks County I.S.D.'s Form 470 #989350000445381 showed signs of limited bidding competition because the RFP specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP. Brooks County I.S.D.'s E-rate 2003 RFP contained the following: Must be Cisco Gold Partner certified for network work and maintenance as prepared by Pat Leo who was responsible for technology at the district. Brooks County I.S.D.'s "BCISD E-rate year 8" request contains the following: All responding vendors whom are submitting proposals for Cisco equipment must currently be a Cisco Gold Certified Partner and provide documented proof. Arturo C. Garcia, Technology Coordinator for Brooks County I.S.D. was listed as the specific contact and responsible party for preparing the E-rate RFP 2005-06 projects.

4.46    Premont I.S.D. showed signs of limited bidding competition because the RFP specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP.

4.47    The La Joya I.S.D.'s Form 470 #438620000446838 shows signs of limited bidding competition because the RFP specifically limits the type of vendors that could respond to

only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP.

4.48 Specific examples of the exclusionary language from La Joya I.S.D.'s RFP include:

> La Joya Independent School District E-Rate 6 (2003-2004)
> LA JOYA ISD REQUEST FOR BIDS FOR: Internal Connections, Telecommunications Services, Internet Access
> BIDS MUST BE DELIVERED BY: January 10, 2003 by 3:00 P.M.
> *Cisco Gold Partner Preferred.*

> La Joya Independent School District E-Rate 10 (2007-2008)
> LA JOYA ISD REQUEST FOR QUOTES FOR: E-Rate 10 (2007-2008) Request for Quotes Internal Connections and Maintenance
> QUOTES MUST BE DELIVERED BY: January 10, 2007 at 3:00 P.M.
> Any vendor submitting a quote for Cisco equipment must be a *certified Cisco Gold partner with current certifications.* The vendor must submit proof of their current certifications. E-rate applications were handled under the direction of Ruben Trevino the Instructional Resources and Technology Director for La Joya I.S.D.

4.49 The IRRA I.S.D.'s Form 470 #220150000432380 shows signs of limited bidding competition because the RFP specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP.

4.50 The San Diego I.S.D.'s Form 470 #813720000439051 shows signs of limited bidding competition because the RFP specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP.

4.51 The United I.S.D.'s Form 470 #663210000419174, #838220000419184, and #336490000418886 show signs of limited bidding competition because the RFP looks like a Cisco cookie-cutter RFP with incentives written into the RFP, and the RFP specifically limits the

type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP. United I.S.D.'s RFP Number 2006-073 limits competition with the following Eligible Vendor must be a Cisco Gold Partner in good standing. United I.S.D.'s E-rate Year 11 RFP 069-2007 contained the following limit to competition Eligible Vendor must be a Cisco Gold Partner in good standing. United I.S.D.'s E-rate Year 12 RFP 2008-087 contained the following limit to competition Eligible Vendor must be a Cisco Gold Partner in good standing. All RFP's and E-rate applications handled under the direct supervision and direction of Hector J. Perez, Executive Director of Technology.

4.52    Further, Defendants used United I.S.D. to gold plate by coercing United I.S.D. into purchasing one hundred and twenty-two WS C6509 switches.

4.53    The Hidalgo I.S.D.'s Form 470 #191740000380838 displays signs of limited bidding competition because the RFP specifically required high level Cisco certifications; thus, limiting vendors who could respond.

4.54    The Hidalgo I.S.D.'s Form 470 #253580000307550, #470380000308897 shows signs of equipment violation. The Form 470s requested a telephone upgrade, and the district requested VoIP quotes. The E-rate program did not discount VoIP during 2003 when this bid was requested. The school district pointed this out. However, Defendants said to proceed and simply label the VoIP system under the guise of an E-rate eligible PBX system.

4.55    The Rio Hondo I.S.D.'s Form 470 #550390000298476 shows signs of equipment violation. The Form 470s requested a telephone upgrade, and the district requested VoIP quotes. The E-rate program did not discount VoIP during 2003 when this bid was requested. The school district pointed this out. However, Defendants said to proceed and simply label the VoIP system under the guise of an E-rate eligible PBX system.

4.56    The Progresso I.S.D.'s Form 470# 630690000255329 shows signs of equipment violation. The Form 470s requested a telephone upgrade, and the district requested VoIP quotes. The E-rate program did not discount VoIP during 2003 when this bid was requested. The school district pointed this out. However, Defendants said to proceed and simply label the VoIP system under the guise of an E-rate eligible PBX system.

4.57    The Pharr-San Juan Alamo I.S.D.'s Form 470 #498520000129821 shows signs of equipment and competitive bidding violations. The Form 470s requested a telephone upgrade, and the district requested VoIP quotes. The E-rate program did not discount VoIP during 2003 when this bid was requested. The school district pointed this out. However, Defendants said to proceed and simply label the VoIP system under the guise of an E-rate eligible PBX system. Further, the RFP specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were eventually awarded this contract.

4.58    The Pharr-San Juan Alamo I.S.D.'s RFP #06-07-020 for Round 10# has the following criteria listed:

> C. ROUTERS AND SWITCHES (NETWORK ELECTRONICS PROJECT):
> Proposer must be a Cisco Gold certified installer.
> D. WIRELESS LAN ACCESS POINTS (WIRELESS NETWORK PROJECT):
> Proposer must be a Cisco Gold certified installer.
> E. TECHNICAL SUPPORT
> Proposer must be a Cisco Gold certified installer and an APC Gold certified installer.
> 1. Cisco Equipment SmartNet Maintenance Renewals
> Proposer must be a Cisco Gold certified installer for service and support.
> J. VOICE OVER IP (VOICE OVER IP TELEPHONY PROJECT):
> Proposer must be a Cisco Gold certified installer. Daniel Saenz, Technology Director for the district supervised and directed E-rate applications and technology purchasing including meeting with vendors.

4.59    At Southwest I.S.D., Relator Shupe alleges that gold plating was present in this school. Defendants perpetrated the gold plating by instructing Relator Shupe to install many unnecessary network drops, over cable the entire schools district, and install Cisco 6509

---

switches. Defendant's Mike Bain helped accomplish the gold plating by offering Southwest I.S.D.'s IT Director, John Malta, a job with Defendant Avnet.

4.60 Los Fresnos I.S.D. showed signs of competitive bidding violations, gold plating excess and illegal E-rate requests. The RFP's specifically limited the type of vendors that could respond to only Cisco Gold Partners. Defendants were eventually awarded this contract. Defendants hired Steve Capps, Los Fresnos employee, after he secured millions of dollars in contracts for Defendants at Lost Fresnos. Los Fresnos I.S.D.'s Form 470 # 175410000634663 for E-rate Year 11 application noted RFP Available for download. Service Providers were able to download prepared excel spreadsheets for Elementary 9 Network Data and New High School Network Data. Upon close inspection of each spreadsheet provided under the "print preview" features listed at the each bottom contain the following: Cisco Systems, Inc. –Confidential and Propriety Empowering the Internet Generation. Billy Simpson, Computer Services Director with Los Fresnos I.S.D. assigned responsibility of technology E-rate applications and technology purchases for the district.

4.61 San Felipe I.S.D. showed signs of limited bidding competition because the RFP and Form 470 # 104270000650437 and 497740000720248 specifically limited the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP.

4.62 La Feria I.S.D. showed signs of limited bidding competition because the RFP specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP. E-rate 12 2009-2010 Internal Connections RFP contains Cisco Gold Certified partner or equivalent as

prepared by Salvador Huerta III responsible for handling E-rate technology purchases for the district.

4.63    Santa Rosa I.S.D. showed signs of limited bidding competition because the RFP's and the Form 470 # 830620000636027, 262160000633608, and 280190000705186 specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP.

4.64    West OSO I.S.D. showed signs of limited bidding competition because the RFP and Form 470 # 107060000574248, 922030000565245, and 750370000705202 specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP.

4.65    Edinburg I.S.D. showed signs of limited bidding competition because the RFP and Form 470 # 390880000587637 specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP.

4.66    Taft I.S.D. showed signs of limited bidding competition because the RFP and Form 470 # 144850000610114 specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP.

4.67    Laredo I.S.D. showed signs of limited bidding competition because the RFP specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP. RFP # 013-08 for E-rate year 11 contained the following: District prefers vendors that are State of Texas

vendors for Cisco and Cisco Gold Partners. Roy Lanier, Chief Technology Officer with Laredo I.S.D. coordinates all E-rate applications and purchasing for the district.

4.68    Mercedes I.S.D. showed signs of limited bidding competition because the RFP and Form 470 # 920890000631345 specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP. Further, Defendants hired a Mercedes employee David Avila Director of Technology after he secured millions of dollars in contracts for Defendants at Mercedes I.S.D.

4.69    San Perlita I.S.D. showed signs of limited bidding competition because the RFP and Form 470 # 511360000644778 specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP.

4.70    Kingsville I.S.D. showed signs of limited bidding competition because the RFP specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP. Mandatory pre-bid conference held at the school district and district personnel turned entire meeting over to Ric Gonzalez, Instructional Technology Consultant for the Region Two Education Service Center. He controlled the entire meeting and mandated all equipment purchases to consist of Cisco allowing other vendors no opportunity to present other options.

4.71    Region One Service Center showed signs of limited bidding competition because the RFP specifically limits the type of vendors that could respond to only Cisco Gold Partners. Defendants were awarded this project due to the exclusionary language in the RFP. Further, Defendants hired Diana Burger, a Region One Service Center employee, after she secured millions of dollars in contracts for Defendants at Region One Service Center.

4.72    Defendants completed each E-rate violation listed above to obtain large profits through the submission of false claims to the Government. Relator has witnessed Defendants tampering with the competitive bidding requirements of the E-rate program through coercing the schools and libraries to include exclusionary language in the RFP's by promising kickbacks, such as jobs for the schools' and libraries' E-rate and technology representatives. The exclusionary language included terms that strictly limited only Cisco certified equipment and services provided by a Cisco Gold-Partner. The RFP's made public by the schools and libraries all looked the same, and most South Texas schools and libraries used Cisco cookie-cutter RFP's.

4.73    Relator has continued to witness excessive E-rate funding awards that were well beyond the normal funding amounts. Relator has continued to notice the practice of gold plating throughout the South Texas schools and libraries. In addition, most schools and libraries ask for network upgrades and replacements every year with the same exclusionary language from the Cisco cookie-cutter RFP's.

4.74    Relator desires for the Defendants to be prohibited from taking advantage of the Government and taxpayers and for Defendants to be punished for their crimes.

## CAUSES OF ACTION

### V.

#### FIRST CAUSE OF ACTION
(False Claims Act: Presentation of False Claims, 31 U.S.C. § 3729(a)(1))

5.1    Relator repeats and re-alleges ¶¶ 1.1 through 4.73 as if fully set forth herein.

5.2    Defendants knowingly presented or caused to be presented material false or fraudulent claims for payment or approval to the United States, including claims that falsely asserted Defendants as the lowest responsible bidders for projects, falsely claimed that the materials used in gold plating the schools were necessary for completion of the project, falsely

documented the progress of the projects in order to receive disbursements form the Government, and falsely presented E-rate ineligible items under the guise of E-rate eligible items.

5.3     By virtue of the false or fraudulent claims knowingly made by the Defendants, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each violation.

## VI.
### SECOND CAUSE OF ACTION
(False Claims Act: Making or Using False Record or Statement to Cause Claim
to be Paid, 31 U.S.C. § 3729(a)(2))

6.1     Relator repeats and re-alleges ¶¶ 1.1 through 4.73 as if fully set forth herein.

6.2     Defendants knowingly made, used, or caused to be made or used, false records or statements—*i.e.*, Defendant Cisco's and Avnet's continued selling and installing of E-rate ineligible VoIP (Voice over IP) equipment under the guise of an eligible PBX system—to get false or fraudulent claims paid or approved by the United States federal E-rate program.

6.3     By virtue of the false records or false statements made by the Defendants, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each violation.

## VII.
### THIRD CAUSE OF ACTION
(False Claims Act: Conspiring to Submit False Claims, 31 U.S.C. § 3729(a)(3))

7.1     Relator repeats and re-alleges ¶¶ 1.1 through 4.74 as though fully set forth herein.

7.2     Defendants knowingly entered into agreements with each other and knowingly conspired to defraud the United States by submitting false or fraudulent claims for reimbursement from the United States for monies to which Defendants were not entitled, in violation of 31 U.S.C. § 3729(a)(3). As part of schemes and agreements to obtain reimbursement from the United States in violation of federal laws, Defendants conspired to falsely claim

Defendants as the lowest responsible bidders for projects, falsely claim that the materials used in gold plating the schools were necessary for completion of the project, falsely document the progress of the projects in order to receive disbursements form the Government, and falsely present E-rate ineligible items under the guise of E-rate eligible items.

7.3    By virtue of Defendants' conspiracy to defraud the United States, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each violation.

## IIX.
### PRAYER FOR RELIEF

8.1    WHEREFORE, Relator prays that judgment be entered in favor of the Government and Relator against Defendant as follows:

8.2    On the First, Second, and Third Causes of Action under the False Claims Act, as amended, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with attorney fees, costs, pre-judgment and post-judgment interest, and all such further relief as may be just and proper, including without limitation the statutory and equitable relief to which Relator is entitled and including Relator's remedies/damages under 31 U.S.C. § 3730(h).

8.3    That, in the event that the United States Government takes over this action, the Relator be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action or settlement of the claim.

8.4    That, in the event the United States does not proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall not be less than 25% nor more than 30% of the proceeds of the action or the settlement.

Respectfully submitted,


  /s/Anthony E. Pletcher
Anthony E. Pletcher
WATTS GUERRA CRAFT, L.L.P.
Attorney-in-Charge
State Bar No. 16069800
Federal Bar No. 2842
Prosperity Bank Building, Suite 1200
500 N. Water Street
Corpus Christi, TX  78471
Telephone: (361) 887-0500
Fax: (361) 887-0055
Email: tpltecher@wgclawfirm.com



  /s/Mikal C. Watts
Mikal C. Watts
WATTS GUERRA CRAFT, L.L.P.
Texas Bar No. 20981820
Federal Bar No. 12419
Four Dominion Drive, Bldg. 3, Ste. 100
San Antonio, Texas 78257
Telephone: (210) 447-0500
Fax: (210) 447-0501
Email: mcwatts@wgclawfirm.com


ATTORNEY FOR PLAINTIFFS